# FINDINGS OF FACT TO ACCOMPANY CONTRACTING OFFICER'S DECISION

## Hudson Bay – EPA Wage Escalation Claim (Case 222)

**CONTRACT NUMBER:** DACA85-02-C-0004

**NAME AND ADDRESS OF CONTRACTOR:** Dick Pacific/GHEMM JV.
P.O. Box 35490
Ft. Wainwright, AK 99703-0490

**DATE OF CONTRACT:** 19 February 2002

**CONTRACT DESCRIPTION:** Bassett Hospital Replacement
Ft. Wainwright, Alaska

Construct a 32-bed, approximately 25,000 square meter multi-story replacement hospital to support the military, dependent and retiree population of Fort Wainwright, Fort Greely, Eielson AFB, and remote military sites north of the Alaska Range. The project includes health care facilities for internal medicine, general surgery, EENT, orthopedics and gynecology, pediatrics and family practice. Other departments include emergency services, radiology, pathology, food service, physical therapy, pharmacy, labor and delivery, dental treatment, and staff administration. The work includes construction of the facility including offices, briefing rooms, storage, maintenance areas, restrooms, shower rooms, life support, mechanical rooms, landscaping, parking lots and site utilities.

**ORIGINAL CONTRACT AMOUNT:** $178,289,000.00

**AMOUNT OF DISPUTE:** $411,665.10

**THE DISPUTE:**

Prime contractor, Dick Pacific/Ghemm, JV (DPG) submitted a claim on behalf of their mechanical subcontractor W.A. Botting Company (Botting) and lower tier subcontractor, Hudson Bay Insulation (Hudson Bay). Hudson Bay contends entitlement to an economic price adjustment for labor in the amount of $327,054.53 and alleges this amount represents actual escalation of labor wage rates encountered to date ($142,005.53) and anticipated escalation to be

encountered in the future ($185,049.00). DPG and Botting have added mark ups bringing the total claim to $411,665.10.

The Government contends Hudson Bay is eligible for an adjustment due to wage escalation but disagrees with the contractor with regard to quantum.

**PERTINENT CORRESPONDENCE:**

1. Reserved
2. Reserved
3. Contractor Serial Letter No. 75-2600-00009-01772, dated November 16, 2005.
4. Government Serial Letter No. FTW171B-2484, dated July 6, 2005.
5. Contractor Serial letter No. 75-2600-00009-01492, dated May 9, 2005.
6. Government Serial Letter No. FTW171B-2340, dated April 20, 2005.
7. Contractor Serial Letter No. 75-2600-00009-01370, dated March 9, 2005.
8. Government Serial Letter No. FTW171B-2128, dated February 22, 2005.
9. Contractor Serial Letter No. 75-2600-00009-01291, dated January 27, 2005.
10. Government Serial Letter No. FTW171B-1944, dated December 15, 2004.
11. Contractor Serial Letter No. 75-2600-00009-01167, dated November 19, 2004.
12. Contractor Serial Letter No. 75-2600-00009-00812, dated March 24, 2004.
13. Contractor Serial Letter No. 75-2600-00009-00796, dated March 15, 2004.
14. Government Serial Letter No. FTW171B-1378, dated February 9, 2004.
15. Contractor Serial Letter No. 75-2600-00009-00720, dated January 29, 2004.
16. Contractor Serial Letter No. 75-2600-00009-00665, dated December 16, 2003.
17. Government Serial Letter No. FTW171B-1238, dated November 24, 2003.

18. Contractor Serial Letter No. 75-2600-00009-00634, dated November 3, 2003.

19. Contractor Serial Letter No. 75-2600-00009-00465, dated May 9, 2003.

20. Government Serial Letter No. FTW171B-126, dated July 17, 2002

21. Contractor Serial Letter No. 001, dated March 4, 2002.

**PERTINENT CONTRACT CLAUSES AND SPECIFICATIONS:**

22. Federal Acquisition Regulation (FAR) 16.203, Fixed-Price Contracts with Economic Price Adjustment.

23. Federal Acquisition Regulation (FAR) 22.401, Definitions.

24. Federal Acquisition Regulation (FAR) 52.216-4, Economic Price Adjustment—Labor and Material (Jan 1997)

25. Federal Acquisition Regulation (FAR) 52.233-1, DISPUTES (Dec 1998).

26. Solicitation, Offer and Award (SF1442), dated 19 February 2002, and attached Proposal Schedule

27. Contract Section 0100, Instructions, Conditions and Notice to Offerors; Paragraph 13, Volume III Price Proposal.

28. Davis-Bacon General Wage Decision No. AK010001, dated 01/04/02.

29. Davis-Bacon General Wage Decision No. AK030001, dated 11/28/03.

30. Davis-Bacon General Wage Decision No. AK030001, dated 03/05/04.

31. Davis-Bacon General Wage Decision No. AK030001, dated 02/11/05.

**OTHER PERTINENT DOCUMENTS:**

32. Technical Analysis of Hudson Bay Baseline Labor Hours.

33. Hudson Bay subcontract with Dick Pacific/Ghemm, JV.

34. Transcript of Pre-Bid Conference on October 31, 2001.

**FINDINGS OF FACT:**

The Government entered into a contract with Dick Pacific/Ghemm JV (DPG) on February 19, 2002 to construct the Bassett Hospital Replacement on Fort Wainwright, Alaska. Notice to Proceed was issued on March 14, 2002 and the original contract completion date was June 17, 2006.

The Government issued two solicitations for this project. The first solicitation was for a firm fixed-price contract and did not contain an economic price adjustment clause. Due to the high prices received from offerors, the first solicitation was cancelled. In the second solicitation, the contract type was changed to a fixed-price contract with economic price adjustment. CLIN 0011 of the Proposal Schedule was included in the solicitation and the awarded contract and limited the economic price adjustment to labor:

> Base line items 0001 and 0002 are subject to clause 52.216-4, Economic Price Adjustment—Labor and Material. Established labor rates and fringes as set forth for laborers and mechanics in Davis-Bacon General Wage Decision Number AK010001 and AK010006, dated 10/19/01, in section 0700A are subject to Adjustment. The quantities of labor allocable to each line item shall be established during the pre-award DCAA audit. Government evaluated EPA adjustments will be reflected as sub-line item under 0011 after contract award.

Per FAR 22.401, "laborers or mechanics" includes workers whose duties are manual or physical in nature, as distinguished from mental or managerial; apprentices and trainees; working foremen and any person performing the duties of laborer or mechanic regardless of any contractual relationship alleged to exist between the contractor and the individual.

Contract Section 00100, Instructions, Conditions and Notice to Offerors, Paragraph 13, Volume III Price Proposal, advised offerors of the type of cost information that would be

required to assist the Defense Contract Audit Agency (DCAA) in performing a pre-award audit for the establishment of a baseline quantity of labor for future economic price adjustments. Paragraph 13.A.3, Subcontracts and Other Direct Costs, extends the requirement for a labor breakdown to subcontractors.

The Government included FAR 52.216-4, Economic Price Adjustment—Labor and Material in the contract. Paragraph (c)(1) states:

> Any adjustment shall be limited to the effect on unit prices of the increases and decreases in the rates of pay for labor (including fringe benefits) in the Schedule. There shall be no adjustment for (i) Changes in rates or unit prices other than those shown in the Schedule, or (ii) Changes in the quantities of labor of those established in the baseline pre-award audit.

FAR 16.203, Fixed-Price Contracts with Economic Price Adjustment, is the prescription for FAR 52.216-4 and provides guidance regarding the Contracting Officer's administration of fixed-price contracts with EPA clauses. FAR 16.203-2(a) states:

> In establishing the base level from which adjustment will be made, the contracting officer shall ensure that contingency allowances are not duplicated by inclusion in both the base price and the adjustment requested by the contractor under economic price adjustment clause.

A pre-bid conference between the Government and prospective offerors was held on October 31, 2001 and the EPA clause was discussed (page 29-30 of transcript). As indicated by the Government, "the intent of [the inclusion of the EPA clause] is to allow contractors to bid competitively for labor rates initially, with the understanding that if rates increase in the future, that he will have a mechanism for getting additional funds to cover those increases in labor costs. That way when you have a five-year duration project or a four-year duration project, you don't have to try to project out for anticipated increases." Offerors were encouraged to ask any

questions regarding the application of the EPA clause either at the conference or later in writing. No questions were asked.

Amendment R0007, issued on January 30, 2002, incorporated the most current amendment of Davis-Bacon Wage Determination AK030001, dated 1/04/02.

The contract was awarded on February 19, 2002 without a pre-award audit to establish a labor quantity baseline due to the magnitude of the effort. On March 4, 2002, in Serial Letter No. 001, the contractor advised the Government that they were still in the process of finalizing subcontract agreements and were unable to "complete this part of the audited items". DPG requested that the Government issue a notice to proceed on the contract and indicated they would submit cost information for subcontractors prior to starting any subcontracting activities. For example, DPG stated that they "would not start any mechanical work until cost information on the mechanical sub is submitted". The Government issued notice to proceed on March 14, 2002.

In Serial Letter No. FTW171B-126, dated July 17, 2002, the Government advised DPG that all subcontracts in excess of $500,000 would be audited to determine the quantities of labor subject to EPA. On November 19, 2002, Hudson Bay executed a subcontract with DPG, in the amount of $3,194,000, for insulation of plumbing systems, HVAC systems and utilidor piping systems. No cost information for the audit of Hudson Bay was submitted prior to execution of the subcontract.

Contractor Serial Letter Nos. 75-2600-00009-00465, -00634, -00665, -00720 and –00796 forwarded notifications of wage escalation from Hudson Bay. As of January 15, 2004, Hudson Bay estimated that they had experienced wage escalation in the amount of $238,407.78 but no labor quantity baseline had been established.

Government Serial Letter Nos. FTW171B-1238 and FTW171B-1378, dated November 24, 2003 and February 9, 2004, respectively, provided information about the administration of the EPA clause. Contractors were advised that bid proposals needed to be submitted and labor quantity baselines needed to be established before any price adjustments for labor wage escalation could be processed.

Contractor Serial Letter No. 75-2600-00009-00812, dated March 24, 2004, forwarded a letter from Hudson Bay regarding the fact that they had not received a contract adjustment despite notification to the Government of wage escalation experienced to date. Hudson Bay agreed that a baseline needed to be established for adjustments and that the adjustments would be determined using published Davis-Bacon wage decisions.

Hudson Bay submitted labor baseline documentation via Contractor Serial Letter No. 75-2600-00009-01167 on November 19, 2004 which consisted of a summary of the labor categories, baseline labor hours and baseline labor rates utilized in their bid estimate and a labor rate detail schedule showing burdened labor rate calculations. Hudson Bay's bid papers had previously been provided to DCAA and the Government. DCAA requested that Hudson Bay provide supporting documentation for the General Liability and Workman's Compensation rates utilized in the compilation of their burdened baseline labor rates.

On December 15, 2004 (Serial Letter No. FTW171B-1944), the Government requested clarification from Hudson Bay regarding the labor baseline information previously submitted. The Government questioned some discrepancies between Hudson Bay's bid documents, their baseline submission and their wage escalation notifications. On January 27, 2005 (Serial Letter No. 75-2600-00009-01291) Hudson Bay explained that their bid estimate was based on 40,911

hours at $40.00/hr and was not broken down into the labor categories submitted earlier as their labor baseline. Hudson Bay submitted no further information for the establishment of their labor quantity baseline. On February 22, 2005 (Serial Letter FTW171B-2128), the Government advised Hudson Bay that the lack of additional labor baseline information or any clarification of previously submitted data, had resulted in an impasse between the Government and Hudson Bay with regard to establishing their labor quantity baseline. The Contracting Officer advised that if labor baseline information was not available, Hudson Bay's request for an economic price adjustment would have to be denied.

Contractor Serial Letter No. 75-2600-00009-01370, dated March 9, 2005, forwarded a letter from Hudson Bay reiterating that their bid was based on 40,911 asbestos worker hours at $40.00/hr. The letter also explained that their actual baseline labor rate calculates to $39.82 and all burdens within that rate have been supported. Hudson Bay rounded the rate to $40.00/hr for estimating purposes.

In Serial Letter No. FTW171B-2340, dated April 20, 2005, the Government acknowledged that Hudson Bay's burdened baseline labor rate was $39.82/hr and unburdened baseline labor rate (base rate + fringe) subject to adjustment was $32.86/hr. The Government advised that the $0.18/hr difference between the burdened baseline labor rate of $39.82/hr and the bid labor rate of $40.00/hr could not be duplicated in adjustments under the economic price adjustment provision of the contract. Therefore, the Government determined that Hudson Bay's baseline labor rate for the purposes of economic price adjustments is $33.04/hr ($32.86/hr + $0.18/hr). Hudson Bay's labor quantity baseline, subject to adjustment, was established as follows:

| | |
|---|---|
| Labor Category: | Asbestos Workers/Insulators |
| Baseline Labor Quantity: | 40,911 hours |
| Baseline Labor Rate: | $33.04/hr |

On May 9, 2005 (Serial Letter No. 75-2600-00009-01492) Hudson Bay submitted a request for adjustment for wage escalation in the amount of $211,113.03. The request included actual wage escalation experienced through December 31, 2004 and projected wage escalation through December 31, 2005. Hudson Bay indicated that they had experienced three Davis-Bacon wage increases between contract award and December 31, 2004 and they applied the net amount of each increase to the number of hours worked during each period.

Government review of Hudson Bay's certified payrolls revealed that the number of hours on the certified payrolls were substantially less than those claimed in Hudson Bay's request for economic price adjustment. On July 6, 2005, in Serial Letter No. FTW171B-2484, the Government advised Hudson Bay of the discrepancy and indicated that unless Hudson Bay provided additional information, their EPA adjustment would be calculated based on the hours reported on the certified payrolls.

No further information was received from Hudson Bay until the request for Contracting Officer's Decision (RCOD) on their request for "labor escalation reimbursement" under the EPA provision of the contract. The request was submitted by DPG in Serial Letter No. 75-2600-0009-01772, dated November 16, 2005, and was certified by DPG in accordance with the Contract Disputes Act.

**CONCLUSION:**

The purpose of issuing a firm fixed-price with economic price adjustment type contract is to share the risk of economic uncertainty between the contractor and the Government. Without

an EPA clause, a contractor must include a contingency to cover unexpected increases in costs in their price. By including an EPA clause in the solicitation, the Government is assured of not paying a contingency for economic uncertainties that may threaten long-term price arrangements since the clause provides a mechanism for recovering those unanticipated costs separately. The clause, however, contains limitations on adjustments and does not provide a guarantee that the contractor will receive compensation for all incurred costs.

Hudson Bay alleges that the issue of their RCOD is "whether Hudson Bay is entitled to a price adjustment due to the escalation of labor wage rates during the course of construction". Government Serial Letter No. FTW171B-2340 acknowledged that Hudson Bay is entitled to an economic price adjustment and established their labor baseline as 40,911 hours at a rate of $33.04/hour (base + fringe) for asbestos workers. An adjustment was not processed because there was a discrepancy between the hours for which Hudson Bay was claiming adjustment and the hours reported in their certified payrolls (Government Serial Letter FTW171B-2484). Hudson Bay did not address the discrepancy but submitted an entirely new calculation of their requested EPA adjustment as part of the RCOD.

Hudson Bay's RCOD also alleges that the Government agreed "to adjust the contractor's price in the event, and to the extent, that the contractor experiences an escalation in wage rates over the course of construction" and that "Hudson Bay has incurred, and will continue to incur, additional labor costs due to wage escalation for which it has not been compensated but is due remuneration". As stated above, this contract is a firm fixed-price with economic price adjustment type contract and FAR 52.216-4 provides for both increases and decreases due to the effects of economic changes to the extent that those changes are reflected in the Davis-Bacon

wage decisions. Additionally, it must be noted that neither the Government nor the contract require the payment of wages in excess of those contained in General Wage Decision AK010001, dated 01/04/02, that was incorporated into the contract by Amendment R0007.

A review of Hudson Bay's revised request for adjustment reveals that the hours claimed are closer to those contained in the certified payrolls but the hour totals appear to include apprentice hours. As indicated in Government Serial Letter No. FTW171B-2340, Hudson Bay did not include apprentices in their baseline thus apprentice hours are not eligible for adjustment. By virtue of the contract, Hudson Bay has already been compensated for all hours at the journeymen rate. The use of apprentices for some of those hours will allow Hudson Bay to realize a savings.

Considering the baseline labor rate of $33.04/hr for asbestos workers and the hours shown in the certified payrolls, Hudson Bay is due an EPA adjustment through December 31, 2005 as follows:

| PERIOD | BASE WAGE | D-B WAGE | DELTA | EPA ADJUSTMENT | HOURS | TOTAL |
|---|---|---|---|---|---|---|
| Award – 12/31/02 | $33.04 | $31.97 | NA | NA | 576 | $0.00 |
| 1/1/03 – 6/15/03 | $33.04 | $34.95 | $1.91 | $1.91 | 484 | $924.44 |
| 6/16/03 – 12/31/03 | $33.04 | $37.35 | $4.31 | $4.31 | 1939 | $8,357.09 |
| 1/1/04 – 12/31/04 | $33.04 | $39.05 | $6.01 | $6.01 | 6389 | $38,397.89 |
| 1/1/05 – 12/31/05 | $33.04 | $40.67 | $7.63 | $7.63 | 10,339 | $78,886.57 |
| | | | | | | |
| | | | | TOTAL | 19,727 | $126,565.99 |

As of December 31, 2005, Hudson Bay had expended 19,727 hours, therefore the remaining number of hours subject to adjustment are 21,184. An adjustment for those hours will be made after the hours are expended by Hudson Bay.

The RCOD submitted by DPG included administrative costs, overhead, profit and bond for W.A. Botting, in the amount of $65,008, and an administrative fee for DPG in the amount of $19,603. In accordance with FAR 16.203-4(c)(4)(ii), the Contracting Officer shall not include in adjustments any indirect cost (except fringes) or profit, therefore these costs are denied.

For the above stated reasons, I find that Hudson Bay is currently due an economic price adjustment in the amount of $126,565.99 for hours worked through December 31, 2005. I find that Hudson Bay may be due a future economic price adjustment for hours worked after December 31, 2005 once the hours are expended. All other costs included in the claim submitted by DPG are denied.

This is the final decision of the Contracting Officer and is issued in response to an appeal based on a deemed denial. Your Complaint has been received and is dated April 18, 2006. It is therefore assumed you are aware of your appeal rights.

6/29/06
Date

Susan M. Coyner
Susan M. Coyner
Contracting Officer